[No. D011636. Fourth Dist., Div. One. Nov. 30, 1990.]

In re ADOLFO M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ADOLFO M., a Minor, Defendant and Appellant.

COUNSEL

Laurance S. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Raquel M. Gonzalez, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

WORK, J.—Adolfo M. appeals a juvenile court judgment, specifically challenging the dispositional order by arguing the temporary judge improperly found Adolfo to be a legal resident of Tijuana, Mexico, ordered his transfer to Mexican juvenile authorities and prohibited his return to the United States without proper documentation and written permission from the juvenile court. As we shall explain, we conclude the juvenile court properly found him to be a nonresident alien and, in any event, his failure to challenge the contents of the probation officer's social study renders this issue not cognizable on appeal because of waiver. Although the juvenile court's order transferring him to Mexican juvenile authorities is consistent with our decision in *In re Manuel P.* (1989) 215 Cal.App.3d 48 [263 Cal.Rptr. 447],

we conclude its further order requiring Adolfo to obtain written permission from the court before reentering the United States is unconstitutional. Accordingly, that portion of the order requiring Adolfo to obtain written permission of the court is modified to require him only to notify the court of his reentry. With this modification to the dispositional order, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

On May 3, 1989, Lidia Calzada, a janitor at the Laundry Land Laundromat in Oceanside, arrived for work at approximately 9:15 p.m. for her four-hour shift during which she was responsible for cleaning, setting the alarm and closing the establishment. While she and her son and a friend were cleaning, Adolfo and an unidentified friend were playing on the Pac-Man video game machine in the store. At approximately 9:45 p.m., only Adolfo and his friend remained in the laundromat, except for Calzada, her son, and his friend. Calzada advised Adolfo it was getting late and she needed to clear the place out. He requested change for a $5 bill. She went to the utility room where her purse was sitting on top of the desk and while Adolfo watched, looked through her wallet to determine she did not have the change he requested. Calzada left her purse on the desktop in the open utility room and returned to cleaning the laundromat and later Adolfo and his friend left. After Calzada examined her purse for change for Adolfo, no one else entered the laundromat. At approximately midnight, she went into the utility room to set the alarm and retrieve her purse, discovering her purse was gone. After a search by her, her son, and his friend produced nothing, she went across the street to the Oceanside Police Department to report the theft. As she did so, she encountered Adolfo in the lobby being released by Officer Aguiguita, who had arrested Adolfo for violating curfew and possessing numerous identification, ATM and credit cards not belonging to him. She identified Adolfo and, after examining the items retrieved, identified her ATM card, Social Security card and California identification card, as well as her husband's credit cards. Adolfo was then rearrested for possessing stolen property.

On November 27, a petition was filed alleging Adolfo came within the provisions of Welfare and Institutions Code[2] section 602 for committing three counts of second degree burglary (Pen. Code, § 459), one count of receiving stolen property (Pen. Code, § 496, subd. 1) and one count of

---

[1] The factual background is substantially abbreviated because the issues posed by Adolfo's counsel are procedural in character rendering irrelevant the specific underlying facts of the offense.

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

misdemeanor misappropriation of lost property (Pen. Code, § 485). On November 28, Adolfo denied the allegations contained within the 1989 petition.[3] On December 28, Adolfo stipulated to having a juvenile court referee hear his matter as a temporary judge. The jurisdictional hearing then commenced on the 1989 petition with the swearing in of Calzada, the victim in the latter two counts. The matter was continued until January 4, 1990, when the juvenile court upon motion of the People dismissed the allegations contained within the first three counts of the 1989 petition with prejudice and dismissed the 1986 petition without prejudice. On January 9, the juvenile court found the allegation of receiving stolen property within count four of the 1989 petition to be true and dismissed the allegation in count five as unproven. At the dispositional hearing on January 12, the juvenile court declared Adolfo to be a ward of the court pursuant to section 602; ordered his custody to be taken from his parents; found him to be a legal resident of Tijuana, Mexico; ordered him committed to the San Diego County Juvenile Ranch; ordered that commitment to be stayed and he be delivered to Mexican juvenile authorities; and ordered he not return to the United States without proper documentation and the written permission of the court. On January 22, the court denied Adolfo's request for a stay of its order delivering him to Mexican juvenile authorities. A request for rehearing and review of the referee's denial of the stay before a superior court judge was denied on February 8. A notice of appeal from the juvenile court judgment was filed on February 14. Two days later, this court granted Adolfo's writ of supersedeas, thereby staying the January 12 dispositional order returning him to the Mexican juvenile authorities pending his appeal.

## The Trial Court Properly Found Adolfo to Be a Legal Resident of Mexico[4]

■  Asserting the record is replete with conclusionary assertions Adolfo is a legal resident of Tijuana, Mexico, based on an equally conclusionary

---

[3] A section 602 petition was filed in 1986 alleging Adolfo had committed two counts of burglary at Jefferson Junior High School in Oceanside and one count of receiving stolen property. Apparently, Adolfo then left the jurisdiction, returning to live with his mother in Mexico. An arrest warrant was issued on that petition on July 24, 1986, and was recalled on November 28, 1989.

[4] Adolfo first contends the juvenile court improperly dismissed his first three counts of the 1989 petition without prejudice, because jeopardy had attached. However, although the minute order inaccurately reflects the People's motion to dismiss the first three counts of the 1989 petition was granted without prejudice, the reporter's transcript reveals the dismissal motion was granted *with* prejudice. It was the People's motion to dismiss the 1986 petition without prejudice which was granted.

Apparently, Adolfo's counsel on appeal misreads the record, erroneously believing the first three counts of the 1989 petition were simply a refiling of the allegations of the 1986 petition. Inferentially, one could conclude he now seeks a dismissal of the 1986 petition with prejudice. However, the deputy attorney general addressed his error in her respondent's brief and

premise his mother was also a resident of Tijuana, Adolfo suggests the juvenile court's finding he is a legal resident of Mexico is unsupported by the record, declaring it is not "entirely clear whether . . . [he] is a United States Citizen . . . . [or] a resident alien."

The juvenile court properly found Adolfo to be a legal resident of Mexico, given his and his mother's statements to the probation officer and his failure to challenge the probation officer's representation he was a legal resident of Tijuana, Mexico. Preliminarily, the court's finding was based on his mother's statement to the probation officer Adolfo was a legal resident of Tijuana, Mexico. Adolfo acknowledged he lived with her in Mexico for a year or two after the 1986 offenses. Moreover, Adolfo never challenged his mother's declaration to the probation officer, either in writing or orally at the dispositional hearing. Although the social study expressly put Adolfo on notice his citizenship was at issue by declaring his legal residence as Mexico, Adolfo never challenged that representation. His failure to challenge the contents of the social study renders this issue not cognizable on appeal due to waiver. (See *People* v. *Bloom* (1983) 142 Cal.App.3d 310, 320 [190 Cal.Rptr. 857]; *People* v. *Evans* (1983) 141 Cal.App.3d 1019, 1021 [190 Cal.Rptr. 633]; *People* v. *Torres* (1982) 133 Cal.App.3d 265, 282 [184 Cal.Rptr. 39].)

## THE JUVENILE COURT PROPERLY ORDERED ADOLFO TRANSFERRED TO MEXICAN JUVENILE AUTHORITIES

■ Adolfo next challenges the juvenile court's order he be delivered to Mexican juvenile authorities pursuant to section 738, because the order was not supported by a proper finding, "based on evidence," he is not a resident of the United States, but a resident of Tijuana, Mexico. Inferentially, he again claims the evidence was insufficient to establish he was a nonresident alien and thus the People have failed to carry their burden of establishing he was unlawfully present here.

Preliminarily, Adolfo simply echoes his first contention here the evidence was insufficient for the juvenile court to find he is a legal resident of Tijuana, Mexico and hence a nonresident alien minor subject to the provisions of section 738. As we have already explained, the court's finding was predicated on uncontested information his mother gave the probation officer he was indeed born in Mexico and is a legal resident of Tijuana, Mexico. Given that Adolfo never challenged these representations during the proceedings below, the juvenile court's finding he is a nonresident alien minor was proper.

---

he has failed to file a reply brief requesting any relief as to the 1986 petition. Accordingly, we will not presume he seeks any relief not requested as to the dismissal of the 1986 petition.

Moreover, we reject Adolfo's inferential contention that the People have the burden of establishing he is not a resident or otherwise lawfully present in this country. Such a burden could entail a herculean task of reviewing voluminous documentation of separate distinct governmental entities to determine whether a defendant has received a visa, temporary permanent, permanent resident alien status, etc. To require the People to scour foreign federal governments to find birth certificates or other documentation of citizenship is an unreasonable burden under these circumstances, giving rise to the application of the rule of necessity and convenience. This rule provides the burden of proving an exonerating or dispositional fact "may be imposed on a defendant if its existence is 'peculiarly' within his personal knowledge and proof of its nonexistence by the prosecution would be relatively difficult or inconvenient." (*In re Andre R.* (1984) 158 Cal.App.3d 336, 342 [204 Cal.Rptr. 723]; *People* v. *Montalvo* (1971) 4 Cal.3d 328, 334 [93 Cal.Rptr. 581, 482 P.2d 205, 49 A.L.R.3d 518]; *People* v. *Pritchard* (1984) 162 Cal.App.3d Supp. 13, 16 [209 Cal.Rptr. 314].) Under this doctrine, the burden here would rest upon the juvenile to contest a proposed nonresident alien finding by proffering to the court documentation readily within the individual's possession (such as a birth certificate, naturalization papers, visa, temporary permit, or permanent alien resident status "green card") which would otherwise be difficult if not impossible for the People to readily and timely produce. Here, Adolfo failed to meet this burden.

### THE JUVENILE COURT'S ORDER REQUIRING ADOLFO TO OBTAIN WRITTEN PERMISSION BEFORE REENTERING THE UNITED STATES IS INVALID

■ Adolfo finally contends the order he not reenter the United States without the court's written permission preempts the federal government's exclusive right to control immigration and interstate commerce. However, within his interstate commerce argument, he simply reiterates his previously rejected arguments the juvenile court improperly found him to be a nonresident alien, rather than relying on his sister's Oceanside address as his mother's legal residence and that that address supported his legal residency. Regarding the immigration preemption argument, he argues this field has been clearly preempted by the Federal Immigration and Nationality Act (8 U.S.C. § 1101 et seq.), rendering improper both his custodial transportation to Mexican authorities as well as the requirement he must obtain the juvenile court's permission before legally reentering the United States.

Preliminarily, in *In re Manuel P., supra,* 215 Cal.App.3d 48, this court upheld the constitutionality of section 738 and the border youth project, expressly holding the return of nonresident alien juveniles authorized by

section 738 and implemented by the border youth project was not preempted by federal laws governing immigration and deportation (*id*. at pp. 61-66); California has the power to order the removal from its borders alien minors who have conducted themselves in such a manner as to fall within the jurisdiction of its juvenile court, and thus section 738 does not violate the compact clause, article I, section 10 of the United States Constitution (*id*. at pp. 66-69); and finally section 738 permitting the juvenile court to order nonresident juveniles returned to the foreign agency charged with their care does not infringe upon the exclusive power of the federal government to make treaties with foreign sovereigns under article I, section 10 of the United States Constitution (*id*. at pp. 69-72). In light of this precedent, Adolfo's challenge to his custodial transportation to Mexican juvenile authorities is unavailing.

Regarding the juvenile court order Adolfo not return to the United States without proper documentation and the court's permission, the "[p]ower to regulate immigration is unquestionably exclusively a federal power." (*De-Canas* v. *Bica* (1976) 424 U.S. 351, 354 [47 L.Ed.2d 43, 48, 96 S.Ct. 933]; *In re Manuel P., supra,* 215 Cal.App.3d at p. 61.) Indeed, " '[t]he Supreme Court has "repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." [Citation.]' " (*Gates* v. *Superior Court* (1987) 193 Cal.App.3d 205, 215 [238 Cal.Rptr. 592], quoting *Lopez* v. *United States I.N.S.* (10th Cir. 1985) 758 F.2d 1390, 1392; see also *People* v. *Arciga* (1986) 182 Cal.App.3d 991, 1000 [227 Cal.Rptr. 611].) "Although the regulation of immigration is unquestionably an exclusive federal power, it is clear that this power does not preempt every state activity affecting aliens." (*Gonzales* v. *City of Peoria* (9th Cir. 1983) 722 F.2d 468, 474.) Nevertheless, state regulation affecting the determination of who should or should not be admitted into the country or placing conditions under which a legal entrant may remain, violates the exclusive power over immigration and deportation constitutionally vested solely in the federal government. (*DeCanas* v. *Bica, supra,* 424 U.S. at pp. 354-357 [47 L.Ed.2d at pp. 48-50]; *In re Manuel P., supra,* 215 Cal.App.3d at pp. 61-63; *Hernandez* v. *State* (Tex.Crim.App. 1981) 613 S.W.2d 287, 290.) Indeed, " '[t]he Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. Under the Constitution the states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the United States or the several states.' " (*Toll* v. *Moreno* (1982) 458 U.S. 1, 11 [73 L.Ed.2d 563, 572, 102 S.Ct. 2977], quoting *Takahashi* v. *Fish & Game Comm'n* (1948) 334 U.S. 410, 419 [92 L.Ed. 1478, 1487, 68 S.Ct. 1138].)

Inasmuch as the requirement of proper documentation simply echoes existing federal requirements pertaining to immigration and the reentry of those subject to prior deportation proceedings, the order is proper. We perceive this condition as being similar to probation conditions requiring the minor to obtain permission from "pertinent legal authorities" (presumably the Immigration and Naturalization Service (INS)) (*U.S.* v. *Mercedes-Mercedes* (1st Cir. 1988) 851 F.2d 529, 530-531), prohibiting entering "the United States until legally authorized to do so" (*U.S.* v. *Jalilian* (10th Cir. 1990) 896 F.2d 447, 449) and prohibiting remaining or reentering the United States illegally (*State* v. *Marquez-Sosa* (1989) 161 Ariz. 500 [779 P.2d 815, 817]), each of which has been upheld as not violating the immigration laws or interfering with the Attorney General's exclusive power over the admission, exclusion and deportation of aliens. (See also *United States* v. *McLeod* (5th Cir. 1979) 608 F.2d 1076, 1078; Annot. (1989) 94 A.L.R. Fed. 619.)

However, a state court may not condition reentry into the United States upon its written permission. Construing the holding of *In re Manuel P.*, the People argue the juvenile court can require an alien subject to its supervision to seek written permission before reentry into the United States, a requirement they urge simply augments federal immigration policy while providing the juvenile court with notification of the intent to reenter. The People assert notification is necessary to ensure a juvenile will receive the supervision and treatment prescribed by the court as well as to guarantee the nonresident alien's reentry into the United States will be lawful. Finally, the People urge the court's written permission requirement is designed to confirm that such supervision has been ordered, who or what agency will have direct supervisorial responsibilities over the juvenile and ensure the juvenile will be notified of the supervisorial person or agency to whom reporting will be necessary. However, the order is not confined to notification, but requires Adolfo to obtain state court permission.

A juvenile court cannot require an alien subject to its supervision to receive written permission before reentry into the United States. (*Hernandez* v. *State, supra*, 613 S.W.2d at p. 290.) Such a requirement clearly conflicts with governing federal immigration policy and regulation by requiring additional state-imposed conditions on one's right to enter the United States. The order Adolfo obtain the consent or written permission of the juvenile court in addition to immigration authorities poses the possibility Adolfo's entry may be permitted by the federal government, but not the state juvenile authorities, and even the possibility the juvenile court would overrule the immigration authorities and refuse to permit Adolfo to reenter the United States even though the immigration authorities had decided to allow reentry. (*U.S.* v. *Mercedes-Mercedes, supra*, 851 F.2d at p. 531.) These

potential infringements upon federal prerogatives over immigration and foreign relations conflict with Congress's delegation of the exclusive power to deport or exclude aliens to the Attorney General and his delegate, the INS. (*Id.* at p. 531; see also Annot. (1989) 94 A.L.R. Fed. 691.)

"A state trial judge cannot . . . make a decision that controls the entry of an alien into the United States. Such control is exclusive to the United States and without the jurisdiction of a state court." (*State* v. *Camargo* (1975) 112 Ariz. 50 [537 P.2d 920, 922].)

Even so, the juvenile court's rationale for requiring notice of Adolfo's return to the United States to ensure proper juvenile court supervision is sound. Written notice to the juvenile court will satisfy this purpose and afford the juvenile an established contact with the proper supervisorial person or agency. Such a notification requirement designed to ensure the juvenile is provided with continued criminal justice supervision while under its authority and in this country is reasonable, constitutional and in deference to federal immigration law. (See *U.S.* v. *Mercedes-Mercedes, supra,* 851 F.2d at p. 531.)

### DISPOSITION

That portion of the order requiring Adolfo to obtain prior written permission from the court before reentering the United States is stricken and modified to simply require him to notify the court of his reentry into the United States. In all other respects, the judgment is affirmed.

Kremer, P. J., and Wiener, J., concurred.