TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : |  |
|  | : | No. 96-801 |
| of | : |  |
|  | : | January 8, 1997 |
| DANIEL E. LUNGREN | : |  |
| Attorney General | : |  |
|  | : |  |
| ANTHONY M. SUMMERS | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____

THE HONORABLE BRETT GRANLUND, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following question:

May California deport an illegal alien convicted of a crime as a condition of granting either probation or parole, and may it make it a crime for such illegal alien to return to the state?

CONCLUSION

California may not deport an illegal alien convicted of a crime as a condition of granting either probation or parole or make it a crime for such illegal alien to return to the state. However, California may release the person to federal immigration authorities for deportation by the federal government.

ANALYSIS

As a general proposition, a person convicted of a crime in California cannot be deported, exiled, or banished as a condition of granting either probation or parole. (See *In re Babak S.* (1993) 18 Cal.App.4th 1077 [juvenile court may not impose probation conditioned on the minor living with his parents in Iran for two years]; *People* v. *Bauer* (1989) 211 Cal.3d 937 [probation may not be granted on condition that defendant not live near his parents]; *People* v. *Beach* (1983) 147 Cal.App.3d 612 [probation may not be granted on condition that defendant leave the community]; *In re White* (1979) 97 Cal.App.3d 141 [probation may not be granted on condition that defendant not enter certain areas of a city]; *In re Mannino* (1971) 14 Cal.App.3d 953 [condition banishing defendant from college, high school, or junior high school campus stricken]; *People* v. *Blakeman* (1959) 170 Cal.App.2d 596 [probation may not be granted on condition that defendant leave the county]; *In re Scarborough* (1946) 76 Cal.App.2d 648 [probation may not be granted on condition that defendant leave the county for two years]; *People* v. *Lopez* (1927) 81 Cal.App. 199 [judgment that defendant "be deported to Mexico" held void].) We are asked to address in this opinion whether it would

that defendant "be deported to Mexico" held void].) We are asked to address in this opinion whether it would make a difference if the person convicted of the crime is an "illegal alien."**Footnote No. 1**

We do not write upon a clean slate in determining whether a state statute may authorize banishment of illegal aliens as a condition of granting probation or parole. California has already adopted legislation permitting a court to order a minor who is resident of a foreign country to be sent to that country as a condition of probation. Welfare and Institutions Code section 738**Footnote No. 2** provides:

"In a case where the residence of a minor placed on probation under the provisions of Section 725 or of a ward of the juvenile court is out of the state and in another state or foreign country, or in a case where such minor is a resident of this state but his parents, relatives, guardian, or person charged with his custody is in another state, the court may order such minor sent to his parents, relatives, or guardian, or to the person charged with his custody, or, *if the minor is a resident of a foreign country, to an official of a juvenile court of such foreign country or an agency of such country authorized to accept the minor*, and in such case may order transportation and accommodation furnished, with or without an attendant, as the court deems necessary. If the court deems an attendant necessary, the court may order the probation officer or other suitable person to serve as such attendant. The probation officer shall authorize the necessary expenses of such minor and of the attendant and claims therefor shall be audited, allowed and paid in the same manner as other county claims." (Emphasis added.)

In *In re Manuel P.* (1989) 215 Cal.App.3d 48, the provisions of section 738 were applied to an illegal alien minor who committed a crime in California, was placed on probation, was ordered not to return to this country illegally, was deported, returned illegally, and committed another crime in California. Under such circumstances, the court examined the constitutionality of section 738, stating in part:

"The principle constitutional issues before us revolve around whether section 738 . . . violate[s] the supremacy clause of the United States Constitution, article VI which states: `This Constitution and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the Judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the Contrary notwithstanding.'

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"The principles which govern our disposition . . . were set forth in large part by the United States Supreme Court in *De Canas* v. *Bica* (1976) 424 U.S. 351, 354-357 [47 L.Ed.2d 43, 48-50, 96 S.Ct. 933]: `Power to regulate immigration is unquestionably exclusively a federal power. See, e.g., *Passenger Cases*, 7 How. 283 . . . (1849); *Henderson* v. *Mayor of New York,* 92 U.S. 259 . . . (1876); *Chy Luna* v. *Freeman*, 92 U.S. 275 . . . (1876); *Fong Yue Ting* v. *United States*, 149 U.S. 698 . . . (1893). But the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus *per se* preempted by this constitutional power, whether latent or exercised. . . [S]tanding alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain. . . .

"`. . . As we stated in *Florida Lime & Avocado Growers* v. *Paul*, 373 U.S. 132, 142 . . . (1963): "[F]ederal regulation . . . should not be deemed preemptive of state regulatory power in the absence of persuasive reasons--either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." . . .

"`. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"`. . . [W]e will not presume that Congress, in enacting the INA, intended to oust state authority to regulate . . . in a manner consistent with pertinent federal laws. Only a demonstration that complete ouster of state power--including state power to promulgate laws not in conflict with federal laws--was "`the clear and manifest purpose of Congress'" would justify that conclusion.'

"With respect to the analysis by which congressional intent to oust state regulation is determined, the Supreme Court has recently stated: `In the absence of explicit statutory language signaling an intent to pre-empt, we infer such intent where Congress has legislated comprehensively to occupy an entire field of regulation, leaving no room for the States to supplement federal law, *Rice* v. *Sante Fe Elevator Corp.*, 331 U.S. 218 . . . (1947), or where the state law at issue conflicts with federal law, either because it is impossible to comply with both, *Florida Lime & Avocado Growers, Inc.* v. *Paul*, 373 U.S. 132, 142-143 . . . (1963), or because the state law stands as an obstacle to the accomplishment and execution of congressional objectives, *Hines* v. *Davidowitz*, 312 U.S. 52, 67 . . . (1941). See *Schneidewind* v. *ANR Pipeline Co.*, 485 U.S. 293, 108 S.Ct. 1145 . . . (1988); *Louisiana Public Service Comm'n* v. *FCC*, 476 U.S. 355, 368-369 . . . (1986); *Pacific Gas & Electric Co.* v. *Energy Resources Comm'n*, 461 U.S. 190, 203-204 . . . (1983).' (*N.W. Cent. Pipeline* v. *State Corp. Com'n of Kansas* (1989) 489 U.S. 493 [103 L.Ed.2d 509, 527, 109 S.Ct. 1262, 1273].)

"In addition to these established tenets of federalism we are also bound by two principles of statutory construction articulated by the California Supreme Court. `First, the enactment may be validated if its terms are reasonably susceptible to an interpretation consistent with the Constitution. [Citations.] Second, the court should construe the enactment so as to limit its effect and operation to matters that may be constitutionally regulated or prohibited.' (*Whelton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 505.)

"Viewing section 738 in light of the foregoing principles we conclude the federal government has not preempted California from ordering nonresident juveniles returned to their country of origin.

"First, as we interpret section 738, the statute does not violate the exclusive power over immigration and deportation which the Constitution vests in the federal government. As *DeCanas* v. *Bica, supra*, 424 U.S. at page 354 [47 L.Ed.2d at page 48], makes clear, the fact aliens are the subject, in part, of the statute does not itself make section 738 a regulation of immigration. *DeCanas* instructs us that regulation of immigration, is `essentially a determination of who should or should not be admitted into the country, and *the conditions under which a legal entrant may remain*.' (*Id.* at p. 355 [47 L.Ed.2d at pp. 48-49].) (Emphasis added.)

"In giving our juvenile courts the power to terminate custody over foreign nationals, we do not believe the state Legislature intended to abrogate any federal power over which foreign nationals may remain in this country. Rather, the language of the statute supports the conclusion the Legislature intended only that our courts have the power to release juvenile offenders from the custody of our judicial system by ordering their return to the country of origin. In light of the plenary power of the federal government over immigration and deportation, which we presume the Legislature considered in enacting section 738, we interpret that statute as allowing courts to order such minors released to federal immigration authorities for deportation by the federal government.

"Our interpretation of section 738 is supported not only by our duty to interpret statutes, where possible, as consistent with the Constitution but also by the actual practices

employed by San Diego officials. Significantly, the record reflects all minors (including Manuel) returned to Mexico under section 738 are first presented to the INS for processing through the federal deportation system.

"Because, as we have interpreted the statute, the power over foreign juveniles provided by section 738 is limited to releasing the juvenile to federal authorities for immigration processing, the statute cannot be said to violate standards of uniformity, or directly conflict with the administration of the Immigration and Naturalization Act (INA).

"Moreover, given an interpretation of section 738 which mandates compliance with the federal immigration laws and regulations, it cannot be said section 738 stands as an obstacle to accomplishment and execution of congressional objectives embodied in the INA. (See *N.W. Cent. Pipeline* v. *State Corp. Com'n of Kansas, supra*, 489 U.S. at p. 510 [103 L.Ed.2d at p. 527, 109 S.Ct. at p. 1273].)" (*Id.*, at pp. 60-64; fns. omitted.)

Accordingly California has no authority to deport a person as a condition of granting probation or parole, whether or not the person is an illegal alien. Deportation is exclusively a federal matter.

With respect to whether California may make it a crime for an illegal alien, deported by federal immigration authorities, to return to the state, we again do not write upon a clean slate. *In re Adolfo M.* (1990) 225 Cal.App.3d 1225, a juvenile court determined that a minor was a legal resident of Mexico, ordered him to be transferred to Mexican juvenile authorities under the terms of section 738, and prohibited his return to the United States without "written permission from the juvenile court." (*Id.*, at p. 1227.) The Court of Appeal found unconstitutional the court permission requirement for reentry into the United States:

"Regarding the juvenile court order Adolfo not return to the United States without . . . the court's permission, the `[p]ower to regulate immigration is unquestionably exclusively a federal power.' (*De Canas* v. *Bica* (1976) 424 U.S. 351, 354 [47 L.Ed.2d 43, 48, 96 S.Ct. 933]; *In re Manuel P.*, *supra*, 215 Cal.App.3d at p. 61.) Indeed, `"[t]he Supreme Court has `repeatedly emphasized that "over no conceivable subject is the legislative power of Congress more complete than it is over" the admission of aliens.' [Citation.]"' (*Gates* v. *Superior Court* (1987) 193 Cal.App.3d 205, 215 [238 Cal.Rptr. 592], quoting *Lopez* v. *United States I.N.S.* (10th Cir. 1985) 758 F.2d 1390, 1392; see also *People* v. *Arciga* (1986) 182 Cal.App.3d 991, 1000.) `Although the regulation of immigration is unquestionably an exclusive federal power, it is clear that this power does not preempt every state activity affecting aliens.' (*Gonzales* v. *City of Peoria* (9th Cir. 1983) 722 F.2d 468, 474.) Nevertheless, state regulation affecting the determination of who should or should not be admitted into the country or placing conditions under which a legal entrant may remain, violates the exclusive power over immigration and deportation constitutionally vested solely in the federal government. (*DeCanas* v. *Bica*, *supra*, 424 U.S. at pp. 354-357 [47 L.Ed.2d at pp. 48-50]; *In re Manuel P.*, *supra*, 215 Cal.App.3d at pp. 61-63; *Hernandez* v. *State* (Tex.Crim.App. 1981) 613 S.W.2d 287, 290.) Indeed, `"[t]he Federal Government has broad constitutional powers in determining what aliens shall be admitted to the Untied States, the period they may remain, regulation of their conduct before naturalization, and the terms and conditions of their naturalization. Under the Constitution the states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and residence of aliens in the Untied States or the several states."' (*Toll* v. *Moreno* (1982) 458 U.S. 1, 11 [73 L.Ed.2d 563, 572, 102 S.Ct. 2977], quoting *Takahashi* v. *Fish & Game Comm'n* (1948) 334 U.S. 410, 419 [92 L.Ed. 1478, 1487, 68 S.Ct. 1138].)

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

". . . [A] state court may not condition reentry into the United States upon its written permission. Construing the holding of *In re Manuel P.*, the People argue the juvenile court can

permission. Construing the holding of *In re Manuel P.*, the People argue the juvenile court can require an alien subject to its supervision to seek written permission before reentry into the United States, a requirement they urge simply augments federal immigration policy while providing the juvenile court with notification of the intent to reenter. The People assert notification is necessary to ensure a juvenile will receive the supervision and treatment prescribed by the court as well as to guarantee the nonresident alien's reentry into the United States will be lawful. Finally, the People urge the court's written permission requirement is designed to confirm that such supervision has been ordered, who or what agency will have direct supervisorial responsibilities over the juvenile and ensure the juvenile will be notified of the supervisorial person or agency to whom reporting will be necessary. However, the order is not confined to notification, but requires Adolfo to obtain state court permission.

"A juvenile court cannot require an alien subject to its supervision to receive written permission before reentry into the United States. (*Hernandez* v. *State*, *supra*, 613 S.W.2d at p. 290.) Such a requirement clearly conflicts with governing federal immigration policy and regulation by requiring additional state-imposed conditions on one's right to enter the United States. The order Adolfo obtain the consent or written permission of the juvenile court in addition to immigration authorities poses the possibility Adolfo's entry may be permitted by the federal government, but not the state juvenile authorities, and even the possibility the juvenile court would overrule the immigration authorities and refuse to permit Adolfo to reenter the United States even though the immigration authorities had decided to allow reentry. (*U.S.* v. *Mercedes-Mercedes*, *supra*, 851 F.2d at p. 531.) These potential infringements upon federal prerogatives over immigration and foreign relations conflict with Congress's delegation of the exclusive power to deport or exclude aliens to the Attorney General and his delegate, the INS. (*Id*. at p. 531; see also Annot. (1989) 94 A.L.R. Fed. 691.)

"`A state trial judge cannot . . . make a decision that controls the entry of an alien into the United States. Such control is exclusive to the United States and without the jurisdiction of a state court.' (*State* v. *Camargo* (1975) 112 Ariz. 50 [537 P.2d 920, 922].)" (*Id*., at pp. 1232-1234.)

Hence a state may not make it a crime to enter the state. Such a statute would constitute a "state regulation affecting the determination of who should or should not be admitted into the country," thus violating "the exclusive power over immigration and deportation constitutionally vested solely in the federal government." It is for the federal government alone to address such matters. However, we note that an illegal alien placed on probation in this state who is deported by federal authorities, and who illegally returns to the United States, violates federal law. (8 U.S.C. § 1325.) Committing a violation of federal law may constitute a violation of probation in this state and may be used as a basis for revoking probation. (*People* v. *Cortez* (1962) 199 Cal.App.2d 839 [order of banishment from United States void but illegal reentry violated conditions of state probation]. A deportee who reenters illegally may thus face revocation of probation and the service of his or her sentence for the crime.

We conclude that California may not deport an illegal alien convicted of a crime as a condition of granting probation or parole or make it a crime for such illegal alien to return to the state. However, California may release the person to federal immigration authorities for deportation by the federal government.

\* \* \* \* \*

Footnote No. 1
For purposes of this opinion, an "illegal alien" is one who is in the United States without authorization. (See *United States* v. *Igbatayo* (5th Cir. 1985) 764 F.2d 1039, 1040 ["an alien who is in the United States without authorization is in the country illegally"].)
Footnote No 2

**Footnote No. 2**
All references hereafter to the Welfare and Institutions Code are by section number only.